**UNITED STATES v. ONE 1940 MERCURY COACH AUTOMOBILE, MOTOR NO. 992140134.**

**No. 267.**

District Court, W. D. Kentucky, Louisville Division.

Feb. 12, 1942.

J. Dudley Inman, Asst. U. S. Dist. Atty., of Louisville, Ky., for libelant.

Lawrence S. Grauman, of Louisville, Ky., for Security Finance Co.

516

MILLER, District Judge.

The United States of America filed this libel against a 1940 Mercury Coach Automobile owned by James O. Logsdon asking that the automobile be forfeited for a breach of the provisions of Section 3321, Title 26 U.S.C.A. Int.Rev.Code. The Security Finance Company, which held a mortgage against the automobile, filed its intervening petition asking that the forfeiture be remitted to the extent of its lien interest in the car, as authorized by the Act of August 27, 1935, formerly carried as Section 40a, Title 27 U.S.C.A., and now carried as Section 646, Title 18 U.S.C.A.

On February 3, 1941, Logsdon made application to the Cooke Pontiac Company of Louisville, Kentucky, to purchase the car in question on the deferred payment plan. The agreed purchase price was $886.38, of which $195 was payable in cash on or before delivery with the balance to be paid in monthly installments for a period of eighteen months thereafter in the amount of $38.41 each. Before closing the deal the Cooke Pontiac Company referred the application to the Security Finance Company to ascertain if it would purchase the lien note to be executed by Logsdon under the conditional sales contract if the sale to Logsdon was carried out. On February 4, 1941, the Security Finance Company investigated Logsdon's credit rating which it found to be satisfactory. At the same time it also made inquiry by telephone at the Louisville office of the Federal Alcohol Tax Unit to ascertain if Logsdon had any record or reputation for violating the liquor laws of either the State or Federal Governments. The answer received over the telephone was that Logsdon had no such record or reputation. The Security Finance Company thereupon advised the Cooke Pontiac Company that the deal was satisfactory, and on the same day, February 4, 1941, the Cooke Pontiac Company closed the deal with Logsdon and delivered him the car. On February 5, 1941, the Cooke Pontiac Company closed the deal with the Security Finance Company and received the check of the Security Finance Company dated February 5, 1941, in payment of the lien note. This check was deposited by the Cooke Pontiac Company at the First National Bank and was paid by the Louisville Trust Company, on which it was drawn, on February 7, 1941. On February 5, 1941, the clerk in the Louisville office of the Alcohol Tax Unit who had handled the telephone conversation the day before with the Security

Finance Company wrote a letter to the Security Finance Company for signature by Mr. Campbell, one of the agents, confirming the answers given to the Finance Company over the phone. She added to the letter this notation: "When this letter was taken for signature Mr. Campbell indicated that Jimmie Logsdon had a definite reputation for being a moonshiner and efforts had been made to apprehend him." The clerk mailed this letter to the Security Finance Company on February 5th, and it was received by the Finance Company on the morning of February 6, 1941. The Cooke Pontiac Company immediately tried to get in touch by phone with Logsdon at the garage where he was employed, but was unable to contact him. On the same day it requested Dickerson, the automobile salesman who handled the deal for the Cooke Pontiac Company, to investigate the statement of the Alcohol Tax Unit. Dickerson contacted Logsdon who assured him that he was having nothing to do with the illegal liquor traffic. This was reported back to the Finance Company. On February 22, 1941, Logsdon was arrested in Louisville, Kentucky, by the city police officers for the illegal transportation of nontax-paid whiskey. There was found concealed in the car at the time two 5-gallon jacket cans of moonshine whiskey.

The United States made serious effort in its proof to establish the fact that the deal with Logsdon was closed and the lien note purchased by the Finance Company on February 3, 1941, and before any inquiries were made by the Finance Company at the office of the Alcohol Tax Unit. If such were the facts, the inquiry made after the interest was acquired would not be sufficient to comply with subsection (b) (3) of Section 646, Title 18 U.S.C.A., if we follow the ruling as announced by the 7th Circuit Court of Appeals in United States v. National Discount Corporation, 7 Cir., 104 F.2d 611, 124 A.L.R. 283. The United States introduced in evidence the coupon book of the Finance Company containing coupons for each monthly payment with each coupon showing that the first payment was due on March 3, 1941, and that the insurance on the car began on February 3, 1941. The insurance policy issued by the Fidelity-Phenix Fire Insurance Company recited that the insurance was in force from noon on February 3, 1941, to noon of August 3, 1942. This same information was carried on a form circular issued to Logsdon by the Security Finance

517

Company advising him of his dates of payment and certain rules which he should follow. On the other hand, the bill of sale introduced in evidence carries the date of February 4, 1941, and the Court is convinced from the stub in the checkbook and from the original check of the Security Finance Company that its check was not issued until February 5, 1941. The evidence also showed that it was the usual custom of the Automobile Company and the Finance Company for the coupon book, insurance policy and form letter of instructions to be made out when the application to purchase the car was filed, and to carry the date of the application, even though the deal was usually not closed on that day. In numerous instances such papers were so made out and never used because the Finance Company did not approve the deal. The Court accordingly finds that the Finance Company made the proper inquiry at the office of the Alcohol Tax Unit on February 4, 1941, before it acquired its lien interest in the automobile. Subsection (b) (3) of Section 646, Title 18 U.S.C.A., requires that such inquiries be made at and a negative answer received from the headquarters of the sheriff, chief of police or principal Federal internal-revenue officer engaged in the enforcement of the liquor laws. This has been construed as meaning that such inquiry need only be made at one of the three offices. United States v. One 1936 Model Ford V-8, 307 U.S. 219, 59 S. Ct. 861, 83 L.Ed. 1249; United States v. One 1935 Dodge Rack-Body Truck, 2 Cir., 88 F.2d 613. Accordingly, the Court holds that the requirements of subsection (b) (3) were complied with.

■■■ Section 646(a) of Title 18 U.S.C. A. confers upon the District Court exclusive jurisdiction to remit forfeitures in such cases as the present one. Subsection (b) of Section 646 makes it necessary that the lienor in any claim for remission meet two requirements in addition to the inquiries referred to above. One of these carried as subsection (b) (2) is that the claimant had at no time any knowledge or reason to believe that the automobile was being or would be used in the violation of any liquor laws. The United States contends that the Security Finance Company did not comply with this requirement in that it had reason to believe that the automobile was being used or would be used in such violation of the law after it received the letter from the Alcohol Tax Unit on February 6th. Attention is called to the fact that the statute requires that the lienor must "at no time" have any such knowledge, which it is contended means either before or after the interest is acquired. A strict literal reading of the statutory provision probably supports this contention, but I have been referred to no reported case so holding. In the absence of persuasive or controlling authority, I am not inclined to give the phrase such a strict and harsh interpretation. The theory and fundamental purpose of the Act is well discussed by the Supreme Court in the United States v. One 1936 Model Ford V-8 DeLuxe Coach, 307 U.S. 219, 59 S.Ct. 861, 869, 83 L.Ed. 1249. It was there said: "these facts indicate that Congress intended a reasonable inquiry concerning the bootleg risk should be made in connection with the investigation of financial responsibility. * * * The forfeiture acts are exceedingly drastic. They are intended for protection of the revenues, not to punish without fault. It would require unclouded language to compel the conclusion that Congress abandoned the equitable policy, observed for a very long time, of relieving those who act in good faith and without negligence, and adopted an oppressive amendment not demanded by the tax officials or pointed out in the reports of its committees." In the present case the conditional sales contract did not give the Finance Company any right to retake possession of the car on the basis of the facts reported to it by the Alcohol Tax Unit. No payment was in default, no condition of the contract could be shown to have been breached. In the conditional sales contract it was provided that the purchaser would not use the automobile in violation of the National or any prohibition laws and should he violate such provision the Finance Company could declare the entire balance of the purchase price as due and payable and proceed forthwith with the collection of the same without notice or demand. But the Circuit Court of Jefferson County (Louisville) had ruled that such a provision did not give the lienor the right to retake possession of the car, or even obtain possession of the car under claim and delivery proceeding in court, and that its rights were restricted to a judicial action for enforcement of the lien like the enforcement of a mortgage against real estate. The known facts in this case would not have supported such a proceeding. There was no action which the Finance Company could have taken to repossess the car. It had not

been negligent in making the loan. It acquired its interest in good faith. It made the inquiries required by the statute. Unless it failed to do something which it could have done, or unless it acted in bad faith or negligently it would be most oppressive, and contrary to the evident purpose and intent of the statute to forfeit its interest in the car.

The intervening petition of the Security Finance Company is sustained, and the forfeiture remitted to that extent. Counsel for the intervenor will prepare and tender for entry Findings of Fact and Conclusions of Law and judgment in accordance with the views herein expressed.